BALLARD *and others against* NOAKS.

ERROR *to Washington Circuit Court.*

A party to the record cannot in general be examined as a witness in the case.

A co-trespasser or co-tort-feasor, is not in general a competent witness on either side. A joint trespasser who has suffered judgment to go against him by default, is not a competent witness for the plaintiff.

In both criminal and civil cases, a party who is put on trial at the same time with other co-defendants, cannot be used as a witness until he has been first acquitted or convicted. A verdict restores his competency, provided it does not render him infamous.

To entitle one defendant, where several are put on trial together, to a verdict first in his own case, it must satisfactorily appear to the court which tries the cause, that no evidence has been adduced against him, and that his testimony is important for the other defendants.

This privilege is awarded him, upon the express condition that there has been *no* proof against him, tending to prove the charge laid ; for if there are any facts or circumstances proved on the trial, going to establish his guilt, though they may not be sufficient to convict him, still he has no right to have his case left to the jury, and afterwards to come in and testify.

Where the plaintiff has closed his testimony, and has wholly failed to adduce any evidence against some of the defendants, it is the duty of the court to permit the jury to retire and find a verdict of acquittal as to those defendants, if the others wish to use them as witnesses, and show by affidavit or otherwise that their testimony is material.

And if the court, in the exercise of this discretionary power should commit a clear, palpable error, seriously prejudicing the rights of the other defendants, it could be reached by appeal or on error.

An affidavit in support of a motion for a new trial, on the ground of surprise and newly discovered testimony, which wholly fails to show any clear facts or circumstances, showing that the party was surprised on the trial, or had used due diligence, gives no support to the motion.

In trespass, it is error to instruct the jury that if the defendant entered first upon the plaintiff's premises by his permission and consent, and afterwards committed any unlawful act, he is to be considered as a trespasser *ab initio.*

Where a party enters by public license or authority of law, and afterwards, in the prosecution of his designs, commits any unwarrantable act, the law regards him as a trespasser *ab initio,* and holds him fully answerable for all the injury committed ; and he is liable, not only for the unlawfulness of the particular act, but also for his original entry.

But where a party enters upon the premises of a private person, by his express or implied consent and permission, and afterwards commits any unlawful act, he is only amenable for his subsequent unwarrantable conduct, and for nothing more.

In such case, the original entry, being lawful, cannot be made unlawful by any subsequent illegal act. And if a contrary instruction is given, the judgment will be reversed.

An accord, to be a bar, must be received and accepted *in satisfaction.* Accord without satisfaction is no bar.

In general an accord should be *executed* and not *executory.*

Where the plaintiff received from one of the defendants, (who were joint trespassers), seventy-eight hides, of the value of $250, as indemnity and redress for the trespasses committed, it was such an accord and satisfaction as constitutes a bar to an action *any* or *all* of the co-trespassers.

Although the evidence spread on the record is not sufficient, when taken by itself, to sustain the judgment, yet if the record does not state that *no other* testimony was adduced, it will be presumed that there was other testimony sufficient to sustain the verdict and judgment.

Ballard *and other against* Noaks.

This was an action of trespass, commenced by *Jesse Noaks* against *Thomas B. Ballard, John Hill, James Mitchell, Alfred Bryan,* and *Daniel Thomison,* in Washington Circuit Court.

The first count in the declaration, was for entering the plaintiff's tanyard, tearing up and damaging the vats, taking out hides, trampling them in the mud, &c., and seizing and carrying away to their own use 208 sides of leather.

The second count was simply for seizing and carrying away 208 sides of leather.

The third count was for a common assault and battery.

The fourth count was for entering the plaintiff's close, (tanyard), and ejecting and moving him therefrom.

The defendant pleaded the general issue, which was joined in, with leave to give all special matter in evidence.

The plaintiff then entered a nol. pros. as to *Bryan,* one of the defendants, and a jury was called to try the issue.

The substance of the evidence in the case, is given in the opinion of the court, to which the reader is referred. When the plaintiff concluded his testimony, the attorney for the defendants moved the court to permit the jury first to find as to Thomison, one of the defendants, in order that the other defendants might use him as a witness in their behalf, upon the ground that the plaintiff had offered no evidence of his guilt, and that his evidence was material to their defence. This motion the court overruled.

Upon the evidence given in the case, and for which the reader is again referred to the opinion, the court instructed the jury, that if the defendants entered plaintiff's close by permission of the plaintiff, and did nothing more than plaintiff consented to, the jury should find them not guilty; but that, although they entered by plaintiff's permission, if they proceeded beyond the license so given by the plaintiff, or committed any unlawful act while there, they were to be taken as trespassers from the beginning; that if Noaks recognized John Hill as the agent of Seaborn Hill, who was the owner of the leather, he was, so far as this case was concerned, to be considered as such agent; that if plaintiff and defendant agreed to settle their difficulties by defendant's giving plaintiff so many sides of leather, to be

Ballard *and others against* Noaks.

then valued by disinterested persons, who were to be chosen by the parties, the defendants were not entitled to remove the sides of leather until they had been so valued; and further, that accord and satisfaction was in effect pleaded, and that it was a good plea only when defendant gives to plaintiff some consideration, for which he agrees to relinquish his right of action against him; and that satisfaction, to be a bar, must not only be *offered* by one party, but *accepted* by the other, unconditionally, or if conditionally, the condition must be complied with, and that if the satisfaction in this case was complete without the receipt, the jury would find for the defendants.

The evidence and instructions were made a part of the record by bill of exceptions, and the evidence is stated by the bill of exceptions to be the whole testimony in the case.

The jury found a verdict of guilty against *Ballard, Mitchell,* and *Hill,* and assessed the plaintiff's damages at $150, after deducting $208 80, the amount of the receipt mentioned in the evidence. *Thomison* they found not guilty.

The defendants *Ballard, Mitchell,* and *Hill,* then moved for a new trial, on the grounds that the verdict was contrary to evidence; that the court refused to permit the jury first to find as to Thomison; that the finding was general, when no evidence was offered conducing to prove the facts alleged in one of the counts; that the defendants were surprised by the testimony introduced by plaintiff to prove the terms of the contract entered into between the defendant Hill and the plaintiff, they having been present, and knowing the evidence to be untrue; and that since the trial they had *ascertained* a witness by whom they could prove that no trespass upon the person or property of the plaintiff was committed; and that the court erred in the instructions given to the jury.

This motion was accompanied by the affidavit of *Mitchell* and *Ballard,* which is, in substance, that they were surprised by the testimony as to the agreement made between *Noaks* and *John Hill;* that the agreement was entirely different, and stating what it was; that Noaks voluntarily consented to their taking the hides, and that they took none but such as he directed them to take; that Ballard was a mere spectator, and had no agency in the transaction, and that *Mitchell*

assisted Hill with the permission of Noaks, and committed no trespass, and offered no violence to Noaks; that Hill never refused to comply with his agreement with Noaks; and that they have discovered a wit- ness since the commencement of the trial, whose testimony they be- lieve they can procure, by whom they can prove the statements in the affidavit, as they are informed and verily believe; that they were not apprised of the materiality of his testimony, and that they could not avail themselves of it, or they would have done so.

The court overruled the motion for a new trial, and the defendants brought up the case by writ of error.

WALKER, for plaintiffs in error:

There can be no question but that the court below erred in over- ruling the motion to permit the jury to find as to Thomison. The doctrine is discussed at length in a case directly in point, in *Wright v. Chandler*, 4 *Bibb* 422, in an action of trespass, where a similar mo- tion was made; and the court said in delivering an opinion in that case, " these proceedings, we are of opinion, are strictly regular. It was proper to order the jury to retire and find as to them, before the case was disposed of as to the other defendants." The same principle is settled in *Dougherty* v. *Dorsey*, 4 *Bibb* 207.

The instruction given by the court below, and assigned for error, were well calculated to perplex the jury. The general doctrine, that if one enter peaceably, and afterwards commit a trespass, that he is esteemed a trespasser from his first entry, is not controverted, nor is it necessary to do so to sustain the errors assigned. They may have entered by permission, and having entered, they might do any act that did not amount to trespass, without becoming trespassers; yet the court instructed the jury that if they did any act other than they were licensed to do, they are to be taken as trespassers from the be- ginning. Suppose A have B's property, and B, even by falsehood, get possession of it, trespass will not be sustained; yet, although such was the fact from the evidence, the jury could not, from the instruction of the court, find for the defendants. The next instruction but en- forces upon the jury the necessity of finding for the plaintiff, for the court instructed them that if the leather was to be valued before

Ballard *and others against* Noaks.

taken away, the defendants had no right to it till it was valued. The last instruction violates a well settled principle of law. It is true that accord without satisfaction is not a good defence, but it is distinctly decided in 3d *Johnson's Cases, page* 234, that accord without *tender* of satisfaction, amounts to satisfaction; yet the court instructed the jury that the satisfaction *must* be accepted unconditionally, or if there be a condition, it *must* be complied with. Now the compliance would be the delivery of the receipt; yet with a knowledge that tender had been clearly proven, the court gave this unqualified instruction.

In the motion for a new trial in the Circuit Court, the defendants, by affidavit, show a surprise, by the statements of the only witness, who proved the terms upon which the hides were to be taken, (a boy), the son of the plaintiff. They state in what the surprise consisted; that they were present, and knew the statements made by the boy to be false; they state that they can prove, by a witness discovered since the trial, a different contract; they show what the contract is. See 2d *Bibb* 33; 3d *Marshall* 109. Ballard and Thomasin are not connected with this taking of the leather. Admit that after entering they had committed an assault and battery on plaintiff, could they be joined in the same action with those who came for the leather? It is conceived not. But they committed no trespass, and it is proven by plaintiff's witnesses that they came for quite different purposes. The first count, for entering the close, &c., is not sustained in evidence in this particular. There is no proof where the alleged trespass took place. See 2d *Selwyn* 483.

LACY, *Judge*, delivered the opinion of the Court:

Before we proceed to examine and determine the questions of law and of evidence that are raised on the assignment of errors, it becomes necessary to state such parts and so much of the testimony, as is applicable to the case now under consideration.

A short time previous to the first day of March, A. D. 1838, Jesse Noaks, the plaintiff in the action, whom the proof shows is a tanner by trade, represented himself as the lawfully constituted agent of Thomas B. Ballard, for the purpose of purchasing raw hides from

one Seborn Hill. Thereupon, Hill sold and delivered to him a quantity of raw hides, amounting to two hundred and eighty dollars and eighty cents, for which Noaks executed and passed Ballard's receipt to Hill. As soon as Ballard was informed of the purchase, he disclaimed the contract, and denied the agency of Noaks. Thereupon, Seborn Hill deputed John Hill as his agent, to demand of Noaks payment for the hides, and if he could not get the purchase money for them, to take back the hides. Noaks had the hides in tan when John Hill applied for payment for them. Noaks refused payment, but offered to give back part of the hides, which Hill at that time refused to accept. The day after this happened, John Hill, in company with Ballard and Bryan, went to Noaks' tanyard, and it was then and there agreed between Noaks and John Hill, that each of them should choose one disinterested person, and value the hides in tan, which Noaks had purchased of Seborn Hill. Upon this agreement being entered into, John Hill, with the assistance of Mitchell, and Bryan, and Noaks' son, and by the express permission and consent of Noaks, commenced drawing the hides from tan, and separating them from the leather of other persons which Noaks also had in tan. Noaks pointed out to them the tan-vats that contained the hides he had got from Sebon Hill, and he gave them the description and marks by which they could be known. He then left the tanyard to get some person to come and value the leather, but before going away he requested the defendants not to draw his leather from any other vats except those he had shown them, as they contained all the hides he had purchased from Seborn Hill. Noaks did not return until the next day; and on reaching the tanyard he discovered other vats had been examined besides those he had pointed out, although the defendants had not taken any hides belonging to his customers, but only those that answered the description given by Noaks, and which was claimed as the property of Seborn Hill. Noaks thereupon became angry, and ordered John Hill, Mitchell, and Bryan, to desist from drawing any more hides from tan, which they accordingly did. A quarrel then ensued between John Hill and Noaks, in regard to the valuation of the leather, the latter insisting to have it valued, and the former objecting to it, on the ground that the hides were the property of Seborn Hill.

Ballard *and others against* Noaks.

Upon Noaks using reproachful words in regard to Ballard, the latter picked up a limehook, and made towards Noaks, who put his hands into his pockets as if he intended to draw a weapon, but he did not draw. Thereupon Hill drew a pistol and Bowie-knife, but immediately concealed them, and Noaks then retreated into his house, and Thomasin said that if he came out with a pistol he would split his head open. Mitchell stopped Ballard as he advanced on Noaks, and there was no wound given or battery committed. After the altercation and affray had subsided, the defendants, Hill, Mitchell, and Bryan, loaded Ballard's wagon with two hundred and eighty sides of leather, which they had drawn from tan, and the wagon containing them was drove off, under the directions of John Hill. After taking that amount from the hides purchased of Seborn Hill, there was still left in the possession of Noaks seventy-eight sides of leather, which he valued at two hundred and fifty dollars. It was then agreed between John Hill and the plaintiff in the action, that John Hill, as the agent of Seborn Hill, should have all the leather that had been put in the wagon and carried away, and that Noaks should retain all the leather in his possession, in full satisfaction for the injury he had received. It was further stipulated between the parties, that Ballard's receipt should be taken up and delivered to Noaks, and he expressly agreed to look to defendants, Thomasin and Bryan, to take up the receipt and deliver it, which they promised to do. There was no time fixed when the receipt was to be delivered. The proof shows that Thomasin and Bryan did procure the receipt of Ballard from Seborn Hill, and that they did, on the 6th day of April, 1838, offer to deliver the same, which Noaks refused to accept. The record then shows that Noaks admitted the leather to be property of Seborn Hill, both before and after the trespass complained of was committed. This constituted the substance of the proof adduced upon the trial.

The assignment of errors questions the correctness of the opinion and judgment of the Circuit Court, first in refusing to permit the jury to retire, and find first as to Daniel Thomasin, one of the co-defendants; secondly, in the instructions given and refused to the jury; and lastly, in overruling the motion of the defendants below for a new trial.

It is a well settled principle of practice supported by all the

authorities on the point, that a party to the record in general cannot be examined as a witness in the case. This is a technical rule, founded partly on considerations of public policy, to prevent perjury, but mainly upon the real or supposed interest that the party to the record is presumed to have. Parties to the record are the suitors in court, and they are presumed to have a direct immediate interest in the subject matter in dispute. To prevent them, then, to testify in the cause, would be to make them witnesses for or against themselves, which the law never allows; as long as their interest is supposed to exist, their incompetency continues. The moment their interest is presumed to have terminated, the objection to their competency ceases, and their right to testify is restored. A co-trespasser or tortfeasor is not in general a competent witness on either side. He cannot be called as a witness for the plaintiffs, for so it was expressly ruled by *Lord Kenyon*, in *Barnard* v. *Dawson*, decided at Guildhall sitting, 1796, and in *Chapman* v. *Graves and others*, 3. *Camp. N. P.* 333. The learned judge who tried the cause, remarked, that a joint trespasser who had suffered judgment to go against him by default, was not a competent witness for the plaintiffs. The rule holds good in criminal as well as civil cases, and a party who is put on trial at the same time with other co-defendants, cannot be used as a witness until he has been first acquitted or convicted. A verdict in his case restores his competency, provided it does not render him infamous, and when he has been either acquitted or convicted, he can then be called as a witness.

His interest in legal contemplation is no longer presumed to exist or to operate on his mind, where there is a finding in his case, and therefore his competency as a witness is revived and exists in full force. But to entitle him to the privilege of a verdict first in his own case, when he has been put on his trial at the same time with the other defendant, it must appear satisfactory to the court that tries the cause, that no verdict has been adduced against him, and that his testimony is important for the other co-defendants. This privilege is given on the express condition that there has been no proof offered against him, tending to prove the charge laid; for if there are any facts or circumstances proved on the trial going to establish his guilt, though they may

Ballard *and others against* Noaks.

not be sufficient to convict him, still he has no right to have his case put to the jury, and afterwards to come in and testify as a witness for the other defendants. When the plaintiff has closed his testimony, and has wholly failed to adduce any evidence against one of several joint defendants, it unquestionably becomes the duty of the court who tries the cause, to permit the jury to retire and find a verdict of acquittal first as to the defendants against whom no proof has been offered, provided the other co-trespassers wish to use him as a witness, and show by affidavit or otherwise the materiality of his statement in their defence. Not to allow other co-defendants the full benefit of this principle, would be to put it completely in the power of the plaintiff, at his mere option, to exclude the whole of their defence, by making all the witnesses *joint trespassers in the same action*, or including them all in the same indictment. The plaintiff has the undoubted right of including in his charge as many persons as he may think proper, for the right itself is an invaluable one when legitimately exercised, and is often found in practice indispensably necessary for the due administration of private as well of public justice. If, however, either through mistake or by design, it is attempted to be exercised unjustly or expressly, then the court who tries the cause is invested with ample discretionary authority to permit the jury to bring in first a verdict of acquital as to the defendant against whom there has been no evidence offered, so that his testimony may be used for the rest of his co-defendants; and should the court, in the exercise of their discretionary power, commit a clear and palpable error or mistake, seriously prejudicing the right of the other co-defendants, then it is quite obvious the judgment below, if excepted to, could be reached by appeal or upon error. But then it must appear there was no evidence whatever offered against the defendant, whose testimony was attempted to be used on the trial. These positions are clearly supported by all the authorities upon the subject, as a reference to them will demonstrate. *2d Starkie's evidence* 763, 4, 5, 6, 7, 8, and cases there cited; *Man* v. *Ward*, 2d *Atk.* 229; *The King* v. *Ellis and others*, *McNally* 55; *The People* v. *Bill*, 10 *J. R.* 95; *Burney* v. *Cutlar*, 1st *Root* 489; *Brown et al.* v. *Howard*, 14 *J. R.* 1191. The application of these principles to the case now under consideration, unquestionably prove that the court below

committed no error in refusing to permit the jury to retire and bring in a verdict first of acquittal as to Daniel Thomasin, one of the defendants. He was put on his trial at the same time with the other co-defendants, and was charged as a joint trespasser with them. The evidence may not have been sufficient, when taken altogether, to have convicted him, and so the jury rendering their verdict determined; but that does not show there was no proof offered against him, tending to establish the trespasses alleged to have been committed. The record clearly demonstrates that there were facts or circumstances proved on the trial, going to establish his guilt, and that, too, of no slight or doubtful character. The defendant Thomasin was present during the whole of the altercation and assault, and appears by words and encouragement to have participated in the transaction; for upon the plaintiff retreating into his house, Thomasin said that if he came out with a pistol he would split his head open. This declaration showed his intention to be hostile, and that he participated in the acts, and entered into the feelings of the other co-trespassers. Then there was certainly some proof offered against him; and that being the case, it necessarily follows, the court below decided correctly in refusing to permit the jury to retire, and find first as to the defendant Thomasin. His co-defendants were not entitled to the benefit of his testimony, unless the plaintiff failed to adduce any proof against him. There was evidence adduced against him, and therefore the objection to the opinion of the court below on this point is not well taken.

The plaintiff in error filed the affidavit of Thomas B. Ballard and James Mitchell, two of the co-trespassers, in support of their motion for a new trial, on the ground of surprise and newly discovered evidence since the determination of the trial. But the motion for the new trial can receive no additional support from the affidavit, for it wholly fails to state any clear facts or circumstances showing that the defendants below were surprised on the trial, or that they used due diligence. The affidavit is therefore essentially defective, for it does not contain a single one of the essential requisites laid down in the case of *Burris* v. *Wise* and *Hind*, decided during the present term of this court.

In regard to the second question presented by the assignment of

errors, it is evident that the court below erred in instructing the jury that if they believed from the evidence, that the defendant in the action entered first upon the plaintiff's premises by permission and consent, but afterwards committed any unlawful act, they were to be considered as trespassers *ab initio,* and punished accordingly. Blackstone says, 2d Chitty's edition, page 210, " every unwarrantable entry upon a man's soil, the law entitles a trespass, by breaking his close." In the eye of the law, every man's land is set apart from his neighbor's, by real or imaginary lines, and every unlawful entry upon it, carries with it some actual or supposed injury to the premises. 7 *East* 207; 2 *Strange* 1004; 1 *Burr.* 133. One man may lawfully enter upon the premises of another by public license or authority of law, or by the private permission and consent of the owner or occupier of the soil. If he enters by either of these ways, he cannot be treated as a trespasser, for his entry is lawful, being given him by authority of law, or by the permission of a private person.

When a party enters by a public license, or by authority of law, and afterwards, in the prosecution of his designs, commits any unwarrantable act, the law regards him as a trespasser, *ab initio,* and holds him fully answerable for all the injury committed; to that extent not only, he is liable for the unlawfulness of the particular act done, but for his original unwarrantable entry. For when the law grants a general or special license to enter, it gives it conditionally, that it will be only used for that purpose alone; and should it be used improperly, or in violation of the authority given, the law adjudges the party who thus abuses its license, a trespasser *ab initio,* and punishes him accordingly, because his subsequent acts show his disposition to have been evil from the beginning, and therefore make his original entry unlawful. This principle proceeded upon the ground of public policy; the law is too sacred and important an office, to allow a private person to violate either its express or implied guaranty, without holding him directly responsible for all the remote as well as immediate damages that have accrued, in consequence of any unlawful act he may have committed. But this doctrine does not hold good where the party enters by the consent or permission of a private person; the reason of the rule no longer exists, and of course the rule

itself ceases. When a party enters upon the premises of a private person, either by his express or implied consent and permission, and afterwards commits any unlawful act, he is only amenable for his subsequent unwarrantable conduct, and for nothing more. If he enters by the consent of a private person, his original entry being lawful, cannot afterwards be made unlawful by any subsequent illegal act; the law does not declare his intention evil from the beginning, or from his original entry, but from the time he committed the first unwarrantable act; as he has transgressed no public license given by law, but only entered with the permission of a private person, his intentions are regarded as innocent and harmless up to the time of the first trespass committed, and he is liable to be punished for all his subsequent illegal acts, and for nothing more. This distinction between the two classes of cases, although it may be said to be subtle and refined, nevertheless it exists in reason and sound policy, and is distinctly and broadly laid down by all the authorities upon the subject. *2d Starkie's evidence* 445; *Gardner* v. *Campbell*, 15 *Johnson Rep.* 401; 4 *Day* 257.

If the position be well established, and of that we think there can be no doubt, then it necessarily follows that the Circuit Court erred in charging the jury. If they believed from the evidence that the defendant below entered upon the plaintiff's premises by permission and consent, but afterwards committed any unlawful act, they are to be regarded and held as trespassers *ab initio.* It is clear that the consent or permission given to enter on the premises in the present instance was that of a private person, and not a general or special license or authority of law, and of course the instruction to the jury on this point was evidently erroneous and illegal; the record shows they were important, and probably influenced to a considerable extent the finding of the jury; and that being the case, it furnished a good cause for a new trial; and so it has been often decided in this court. We might here close our inquiries, by reversing the judgment and opinion of the Circuit Court upon this point; but while we have the record before us, we deem it proper to lay down the doctrine in regard to what constitutes a good bar to the plaintiff's right of action, under the plea of accord and satisfaction, which in effect

Ballard *and others against* Noaks.

which in effect is specially pleaded in this case. Accord is a satisfaction or agreement between the party injuring and a party injured, which performed, is a bar to all actions on that account. "For example, if the party injured accepts a sum of money or other valuable thing, then that constitutes a redress of the injury, and the right of action is then entirely taken away." 2 *Chitty's Blackstone* 16; *Com. Digest, title Accord; 2d Starkie's evidence* 26; *Paramore* v. *Johnson,* 1 *Ld. Raym.* 566; 12 *Mod.* 376. Consent of a party to accept in satisfaction, without actually receiving it, does not form a valid bar to the action. The accord must be shown to be accepted in satisfaction of the thing demanded; and although that satisfaction may have been agreed upon, still it will be no valid bar to the action, unless it be actually received, and operate in full satisfaction. The satisfaction, as well as the accord, must be reasonable, sudden, and complete. In general, the accord and satisfaction should be executed, not an executory contract. Should it, however, be executory, then, in order to make it obligatory, the terms or the conditions of the agreement must be strictly performed. We do not think it incumbent upon us to determine the question, whether an accord with a tender of satisfaction, and a refusal to accept the satisfaction agreeably to the terms of the contract by the plaintiffs, constitute a good bar and destroy the right of action. That point is not necessarily involved by the pleadings and proof in the cause now before us, and therefore we express no opinion upon it. The accord and satisfaction which was in effect specially pleaded in the case, consist of the agreement made and executed between John Hill, one of the defendants, and the plaintiff in the action. That agreement was an executed, and not an executory contract, as the evidence in the case conclusively demonstrates. The contract was entered into and carried into effect after the trespass complained of was perpetrated; and the satisfaction rendered by the defendant, and which was actually accepted by the plaintiff, operated as a complete, full, and executed satisfaction of all his right of action, not only on account of one, but of all the defendants. An accord and satisfaction made and executed by one of several joint defendants for a tort or other injury, extinguishes the plaintiff's right of action, not only as to him, but as

to his other co-defendants. The whole doctrine in regard to what constitutes a sufficient accord and satisfaction, will be found fully illustrated and explained by the annexed authorities. 2 *Starkie on Evidence* 26; *Paramore* v. *Johnson,* 1 *Ld. Raym.* 566; 12 *Mod.* 376; 2 *Chitty's Blackstone; Com. Digest, title Accord,* 3 *Co.* 17; 5 *T. R.* 141; *Fitch* v. *Sutton,* 5 *East* 230; *Dufresne* v. *Hutchinson,* 3 *Taunt.* 117; *Lynn* v. *Bruce,* 2 *H. B.* 317; *Heathcote* v. *Crookshanks,* 2 *T. R.* 24.

The instruction of the court below, in regard to the plea of accord and satisfaction, is somewhat vague and inconclusive, and not very well calculated to lead the mind of the jury to a correct conclusion.

The court seemed to have proceeded upon the ground, that the accord and satisfaction pleaded and proved on the trial, was conditional and executory, and was not obligatory upon the plaintiff, because he had refused to accept Ballard's receipt, which Bryan and Thomasin promised to get from Seborn Hill, and deliver to him. This agreement with Bryan and Thomasin, in regard to the delivery of Ballard's receipt, did not enter into or form any part of the contract with John Hill, one of the defendants. It was this latter agreement that constituted the accord and actual satisfaction given and received, and which in itself is wholly disconnected and separated from the promise of Bryan and Thomasin, to deliver Ballard's receipt. That promise or agreement as to Bryan, was a mere *nudum pactum;* and as Thomasin, who is shown to be one of the defendants, if he is liable at all, (which, by the bye, is exceedingly questionable), why, then the plaintiff should have his action against him for a violation of the contract. But the evidence clearly proves, if Thomasin should be considered liable in the first instance for the delivery of the receipt, he completely discharged himself from all liability on that account. There was no precise time fixed when the receipt was to be delivered, and as Thomasin procured it and tendered it to the plaintiff within a reasonable time, which he refused to accept, he thereby released himself from all further responsibility. The agreement of Thomasin with the plaintiff was a wholly different and distinct matter from the accord and satisfaction entered into and executed between himself and Hill. The plaintiff not only agreed to

take, but actually did secure from John Hill, as the agent of Seborn Hill, seventy-eight sides of leather, equal in point of value to two hundred and fifty dollars, as indemnity and redress for the trespasses committed. This remedy and redress constituted an actual satisfaction, and took away the plaintiff's right of action against all the defendants. There is no contradiction or discrepancy in the proof in regard to the accord and satisfaction established by all the witnesses. The plaintiff then having no right of action against any one of the defendants, it is perfectly evident that the verdict was expressly contrary to law and evidence; and if there was no other testimony adduced on the trial except what appears in the record, the court below ought, on the defendant's motion, for that cause alone, to have granted him a new trial. But the record fails to state that no other evidence was offered or received on the trial, and that being the case, the presumption is, other testimony might have been adduced which authorized the verdict. Owing to the imperfections of the record, which is cured by the presumption in its favor, we would not feel ourselves justified for this error alone, to reverse the judgment of the court below. But we have already shown that the Circuit Court that tried the case, erred in a material point in the instructions given to the jury; and therefore its decision and judgment must be reversed and set aside, with costs, a new trial awarded, and the cause remanded, to be proceeded in agreeably to the opinion here delivered.